### In the Matter of USA RENT–A–CAR/FLORIDA, INC., Debtor.

### Larry HYMAN, Trustee, Plaintiff,

### v.

### SUN BANK OF TAMPA BAY; United States of America, Internal Revenue Service, Defendants.

Bankruptcy No. 89–8192–8B7. Adv. No. 92–730.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 30, 1992.

Hywel Leonard, for plaintiff.

Patricia W. Woodruff, for defendant.

### ORDER ON PRELIMINARY IN-JUNCTION AND DECLAR-ATORY RELIEF

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on to be heard upon the stipulated facts of the parties in an adversary proceeding brought by the Chapter 7 Trustee for a temporary restraining order, preliminary injunction, and declaratory relief. This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

On November 10, 1989, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.). Debtor ran a rent-a-car business in Florida and had various subsidiaries, most of which are currently in bankruptcy.[1] On May 6, 1991, this Court appointed a Chapter 11 Trustee. After various attempts to present a confirmable plan, on September 2, 1992, the Chapter 11 case was dismissed in open court. On September 4, 1992, the Court entered two orders: one dismissing the Chapter 11 case, the other granting the U.S. Trustee's motion for reconsideration and setting a hearing. At the hearing on

---

1. TPA Airport Travel, Inc. (Case No. 89–8746–8B1); FLL Investors, Inc. (Case No. 89–8747–8B1); and MCO Rent A Car, Inc. (Case No. 89–8748–8B1), were substantively consolidated with Debtor's case on January 30, 1990. These substantively consolidated cases were subsequently converted to Chapter 7 cases on September 14, 1992. MSY Airport Investors, Inc. (Case No. 89–8744–8B1), and STL Airport Investors, Inc. (Case No. 89–8745–8B1), were converted to Chapter 7 cases on the Court's own motion on January 8, 1990.

September 14, 1992, the Court vacated the order of dismissal and converted the case to Chapter 7. Plaintiff was appointed the Chapter 7 Trustee.

After the ruling in open court that the Chapter 11 case would be dismissed, Daniel G. Brandano, Debtor's principal, closed Debtor's bank accounts and transferred the funds to Defendant Sun Bank of Tampa Bay. On September 10, 1992, Brandano caused Sun Bank to issue four cashier's checks payable to the Internal Revenue Service (IRS).[2] All of the payments made to the IRS were for Brandano's tax liabilities under Section 6672 of the Internal Revenue Code (26 U.S.C.).[3]

On an emergency basis, this Court considered, *ex parte*, Plaintiff–Trustee's motion for a temporary restraining order against the IRS and Sun Bank and on September 16, 1992, entered an order enjoining the IRS from presenting the cashier's checks and Sun Bank from honoring any such cashier's checks payable to the IRS. At a subsequent hearing all parties agreed that the Court would consider the entire matter on stipulated facts.

The parties agree that the money utilized by Brandano to obtain the cashier's checks payable to the IRS was money of the Chapter 11 Debtor controlled by the Chapter 11 Trustee. Further, the parties agree the cashier's checks payable to the IRS were prevented from being presented to Sun Bank by the IRS because of the temporary restraining order.

Moreover, it is undisputed that Brandano had no authority to obtain funds which were property of the estate, transfer those funds to Sun Bank, and procure cashier's

checks from Sun Bank since the Chapter 11 case had not been dismissed by any written order of this Court and this Court's immediate grant of reconsideration once the order of dismissal was entered. Brandano had no authority to act due to the presence of the Chapter 11 Trustee and the absence of Court approval.

Nonetheless, the issue here concerns the effect of these attempted transfers to the IRS under the Bankruptcy Code and under the law of negotiable instruments in general. The initial inquiry is whether the Bankruptcy Court can enjoin the IRS from presenting the cashier's checks.

In *United States v. Nordic Village, Inc.*, — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), the Supreme Court dealt with similar facts. The major distinction between *Nordic Village* and the instant case is that the cashier's check in *Nordic Village* had been presented and the funds applied to the principal's tax liability. Thus the Chapter 7 Trustee in *Nordic Village* sought to have money returned rather than seeking injunctive or declaratory relief as the instant proceeding does. Here, the IRS has been prevented from presenting the cashier's checks due to the temporary restraining order prohibiting those checks from being honored by the bank. Although the Supreme Court in *Nordic Village* held that Section 106(c) of the Bankruptcy Code is not an unequivocal waiver of sovereign immunity from the Trustee's claims for monetary relief, the Supreme Court did note that injunctive or declaratory relief against the United States may be authorized by Section 106(c) (*Nordic Village*, — U.S. at —, 112 S.Ct. at 1015):

**2.** On September 14, 1992, Brandano obtained an additional cashier's check from Sun Bank in the amount of $1,763.37 payable to Budget Rent–A–Car, Inc. Although Budget was originally a defendant in this action, Budget has since been dropped as a party to this action.

**3.** Check No. 722710 in the amount of $2,430.24 was presented to the IRS to satisfy Brandano's responsible person penalty attributable to the unpaid employment and withholding tax obligations of MSY Airport Investors, Inc; Check No. 722711 in the amount of $59,672.27 was presented to the IRS to satisfy Brandano's re-

sponsible person penalty attributable to the unpaid employment and withholding tax obligations of MCO Rent–A–Car, Inc.; Check No. 722712 in the amount of $6,511.50 was presented to the IRS to satisfy Brandano's responsible person penalty attributable to the unpaid employment and withholding tax obligations of STL Airport Investors, Inc.; and Check No. 722713 in the amount of $7,628.15 was presented to the IRS to satisfy Brandano's responsible person penalty attributable to the unpaid employment and withholding tax obligations of Debtor.

... § 106(c) [of the Bankruptcy Code] permits the bankruptcy court to issue "declaratory and injunctive"—though not monetary—relief against the Government ... The distinction ... between suits for monetary claims and suits for other relief ... is a familiar one ...

It is the holding of this Court that the Bankruptcy Court does have jurisdiction to issue an injunction to prevent the IRS from presenting, and Sun Bank from honoring, the cashier's checks in this case.[4] Since the cash used to purchase the cashier's checks is property of Debtor's estate, the cashier's checks themselves are property of Debtor's estate. Plaintiff–Trustee may avoid the transfer of the cashier's checks under Section 549 of the Bankruptcy Code and recover possession of the cashier's checks from any party currently holding them under Section 550 of the Bankruptcy Code.[5]

■■■ Notwithstanding the enjoining of the IRS, this Court is also required to ascertain the legal effect of the acquisition of the cashier's checks by the IRS. A cashier's check is an independent, unconditional, primary obligation of the issuing bank. *Warren Finance v. Barnett Bank*, 552 So.2d 194, 196 (Fla.1989). Because the issuing bank is personally liable, rather than the purchaser, a cashier's check generally acts as a cash substitute and generally removes all doubt as to whether the instru-

ment will be returned to the holder unpaid due to insufficient funds, a stop payment order, or insolvency. *Warren Finance*, 552 So.2d at 195–196. However, a cashier's check is not cash. An issuing bank may assert narrowly limited defenses to the dishonor of a cashier's check. *Warren Finance*, 552 So.2d at 201.[6] Thus the actual possession of the cashier's checks by the IRS is of no consequence. Therefore, despite the IRS's receipt of the cashier's checks, the IRS does not have any greater rights against the claims of Plaintiff–Trustee which would cut off Plaintiff–Trustee's rights to regain the cashier's checks.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that a preliminary injunction is imposed under which the IRS is prohibited from presenting the cashier's checks for payment and Sun Bank is prohibited from honoring those cashier's checks should the IRS present them for payment. It is further

ORDERED, ADJUDGED AND DECREED that the funds represented by the four cashier's checks are property of Debtor's estate. It is further

ORDERED, ADJUDGED AND DECREED that any party currently in possession of any of the four cashier's checks shall immediately provide those cashier's checks to Plaintiff–Trustee. It is further

4. Today's holding does not in any way implicate the Anti–Injunction Act (26 U.S.C. § 7421(a)). The Anti–Injunction Act provides "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." Here, Plaintiff–Trustee is not seeking to restrain the assessment or collection of any tax. Plaintiff–Trustee is merely seeking to maintain the integrity of Debtor's estate from unauthorized diminution. The IRS is certainly free to continue its efforts to collect the responsible person penalty from Brandano.

5. Assuming, *arguendo*, the cashier's checks had been presented and honored, Plaintiff–Trustee may not be prohibited from seeking a monetary judgment against the IRS. On December 17, 1990, the IRS filed a proof of claim in this case in the amount of $123,934.49 for the pre-petition employment and withholding tax obligations of Debtor and MCO Rent–A–Car, Inc. A

substantial portion of the tax liability to be satisfied from the cashier's checks was attributable to the unpaid employment and withholding tax obligations of MCO Rent–A–Car, Inc., and Debtor. Thus, Plaintiff–Trustee may be able to seek a monetary judgment under Section 106(a) or setoff under Section 106(b). *See In re Fernandez*, 125 B.R. 317, 320 (Bankr.M.D.Fla.), *aff'd in part*, 132 B.R. 775 (M.D.Fla.1991).

6. Under circumstances such as those in the instant case, the Uniform Commercial Code would permit the issuing bank an additional defense for dishonoring a cashier's check. The issuer of a cashier's check is not liable for any expenses or consequential damages for refusing to honor a cashier's check if the payment of the check is prohibited by law. U.C.C. § 3–411(c)(iv). Florida has not yet adopted this particular provision of the Uniform Commercial Code, but on January 1, 1993, shall do so. *See Fla.Stat.* § 673.4111(3)(d) (1992).

ORDERED, ADJUDGED AND DECREED that upon receipt of the cashier's checks from Plaintiff–Trustee, the funds being held by Sun Bank to honor the four cashier's checks shall be relinquished to Plaintiff–Trustee for distribution in accordance with the priorities established by the Bankruptcy Code and Sun Bank shall have no liability to any entity for refusing to honor the four cashier's checks payable to the IRS.

DONE AND ORDERED.